IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

BOBBY WADE MONAGHAN,       )
                                                      )
          Plaintiff,                            )
                                                      )
v.                                                 )          CASE NO. 1:20-CV-440-RAH
                                                      )                    [WO]
BENJAMIN MOATES, et al.,         )
                                                      )
          Defendants.                       )
                                                      )

## MEMORANDUM OPINION AND ORDER

## I.        INTRODUCTION

On November 30, 2004, while incarcerated at the Coffee County Jail, Joseph

Boyett told law enforcement that he was sodomized by his cellmate, Bobby Wade

Monaghan.  A day or so later, Boyett made bond and was released.  Monaghan was

later indicted by a grand jury and convicted of first-degree sodomy based on Boyett's

allegation.  Over a decade later, Boyett recanted his story, stating that his testimony

about Monaghan's actions was false and that Monaghan was innocent.  Because

Boyett's testimony was the only evidence presented at Monaghan's criminal trial

that the sodomy had occurred, Monaghan's sodomy conviction was vacated.

Monaghan then filed this civil lawsuit, asserting claims under 42 U.S.C.

§ 1983 against Myron Williams and Benjamin Moates, both of whom were

employed with the Coffee County Sheriff's Department, claiming that Williams and

1

Moates had coerced Boyett into making false allegations against Monaghan in return for Boyett's freedom.    Specifically, Monaghan asserts claims for malicious prosecution, failure to intervene, and conspiracy against both Williams and Moates as well as a supervisory liability claim against Moates.

Pending before the Court is the Defendants' motion for summary judgment. After reviewing the parties' submissions, the Court concludes that the motion is due to be granted in part and denied in part.

## II.  JURISDICTION AND VENUE

The Court has original subject matter jurisdiction over Monaghan's federal claims under 28 U.S.C. § 1331.  Personal jurisdiction and venue are uncontested, and venue properly lies in the Middle District of Alabama.  *See* 28 U.S.C. § 1391.

## III.  STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  When the nonmoving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to [its] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The legal elements of a claim determine which facts are material and which are irrelevant. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  A fact is not material if a dispute over that fact would not affect the outcome

2

of the case under the governing law.  *Id.*

A court must view the proffered evidence in the light most favorable to the nonmovant and resolve all reasonable doubts about the facts in the nonmovant's favor.  *Johnson v. Bd. of Regents of Univ. of Ga.*, 263 F.3d 1234, 1242–43 (11th Cir. 2001).  The nonmovant must produce sufficient evidence to enable a jury to rule in his favor; a mere scintilla of evidence in support of a position is insufficient.  *Id.* at 1243.

## IV.  BACKGROUND

Construing the record in a light most favorable to Monaghan, the nonmovant, the events underlying this suit are as follows:

### A. Boyett Accuses Monaghan of Sodomy

In September 2004, Monaghan was arrested for sex crimes against his daughters and placed in the Coffee County Jail.  (Doc. 72-1 at 13–15.)  Two months later, Boyett was arrested for drug possession and was placed in a jail cell with Monaghan.  (Doc. 72-15 at 5.)

On November 30, 2004, Boyett informed Myron Williams and Benjamin Motes, both of whom were employed in the Coffee County Sheriff's Department, that Monaghan had forced him to perform oral sex while in their cell together.  (*See* Doc. 72-5; Doc. 72-15.)  Williams and Moates informally interviewed Boyett about

the incident, and then followed it with a formal video and audio-recorded interview. (*See* Doc. 72-15 at 5–7; Doc. 72-5.)

Following these interviews, Boyett was transferred to a different jail cell and appointed legal counsel. (Doc. 72-15 at 6.) After Moates informed Boyett's appointed counsel of Boyett's "unusual situation," Boyett was released from the Coffee County Jail on bond. (*Id.* at 6–7.) The drug possession charges against him were later dismissed. (Doc. 72-6 at 40–47.) According to Monaghan, sometime in late December 2004, Monaghan was also released from the Coffee County Jail on bond but he was not aware of Boyett's sodomy allegation against him at the time. (Doc. 72-2 at 23–24; *see* Doc. 72-1 at 28.)

## B. Monaghan's Conviction

Williams presented the Coffee County District Attorney's Office with an incident report containing Boyett's accusation against Monaghan. (Doc. 72-4 at 9; Doc. 72-7 at 8; Doc. 72-15 at 3–4.) According to Gary McAliley, the district attorney at the time, he had previously sentenced Boyett in a case involving "active dishonesty" when he was a circuit judge and he knew that "people who were . . . incarcerated will tell a story one way one day and then when they get out, they'll tell it another." (Doc. 72-7 at 8.) After Monaghan's case had been set for the November 2015 grand jury term, McAliley sent Bruce Matthews, an investigator with his office, to interview Boyett to ensure that his statement was consistent with the

statement he gave to Williams and Moates during their interviews of him.  (*Id.* at 8–9, 13.)

On September 1, 2005, Matthews separately interviewed Boyett about his accusation against Monaghan and documented Boyett's statement in a preliminary report.  (Doc. 70-9; Doc. 72-7 at 8.)  McAliley reviewed Matthews's preliminary report of Boyett's statement, which according to McAliley, was "substantially similar" to the statement in the incident report provided by Williams.  (Doc. 72-7 at 6, 8.)  McAliley then presented Boyett's accusations to a grand jury, during which Matthews testified.  (*Id.* at 9–10.)  Williams and Moates did not testify before the grand jury but showed up while the grand jury was deliberating.  (*Id.*)  Thereafter, the grand jury indicted Monaghan for first-degree sodomy.  (Doc. 72-7 at 13; Doc. 72-17 at 1.)  Monaghan was subsequently arrested and then released on bond.[1]  (Doc. 72-1 at 28; Doc. 72-17 at 4.)

---

[1] The parties dispute whether Monaghan was formally arrested by the Coffee County Sherriff's Department or whether he voluntarily turned himself in.  (*See* Doc. 73 at 29, 52; Doc. 75 at 5.)  Monaghan's arrest record for his state criminal charges for the sodomy of Boyett shows that he was arrested on March 24, 2006, (Doc. 72-17 at 1), but Monaghan stated in his deposition that he was not arrested but rather turned himself in (Doc. 72-1 at 28).  Whether Monaghan was formally arrested or voluntarily surrendered does not appear to be a dispositive issue, as the Eleventh Circuit has reasoned that a voluntary surrender after learning of an arrest warrant could constitute a seizure for the basis of a § 1983 claim.  *See Whiting v. Traylor*, 85 F.3d 581, 584–85 (11th Cir. 1996), *abrogated on other grounds by Wallace v. Kato*, 549 U.S. 384, 389–90 (2007)).  Thus, Monaghan's voluntary surrender following his indictment may still constitute a seizure for the purpose of his malicious prosecution claim since he "subjected himself physically to the force of the state."  *Id.* at 585 n.6.

Boyett, Williams, and Moates each testified in Monaghan's criminal trial. (*See* Doc. 72-16.)   Monaghan was found guilty of first-degree sodomy.   (Doc. 70-19.)

### C. Boyett Recants Trial Testimony

Approximately ten years later, Boyett signed a sworn affidavit stating that he had lied during Monaghan's criminal trial and that Monaghan was innocent.  (Doc. 70-24.)  Monaghan then filed a Rule 32 Petition for Relief from Conviction with the Coffee County Circuit Court.  (Doc. 70-23 at 1.)  During the Rule 32 hearing, when asked why he had made a false accusation against Monaghan, Boyett testified that he was "manipulated by the district attorney's office and possibly even the sheriff's department of a way to clear my own record and get out of jail."  (Doc. 70-26 at 22.) Specifically, Boyett testified that he was presented with the false sodomy story by individuals with the sheriff's department as a way to get out of jail:

> When I was taken out of the cell, I was presented with this story and taken to the conference table in the front of the sheriff's office and had me—I can't even remember his name.  It was so long ago.  It was a black man.  I don't know if it was a deputy sheriff or the sheriff.  I don't really know his name.  But we sat at the conference table, and they had me rehearse this story.  And then after two or three times, they recorded it.

(Doc. 70-26 at 23.)  Finding Boyett's testimony credible, the Coffee County Circuit Court vacated Monaghan's sodomy conviction on February 21, 2018. (*See* Doc. 70-23.)

### D. Procedural History

Monaghan then initiated this suit.  In its present form, Monaghan asserts a claim for malicious prosecution (Count I), failure to intervene (Count II), and civil conspiracy (Count III) against both Williams and Moates, and a supervisory liability claim against Moates individually (Count IV).

## V.  DISCUSSION

As a threshold matter, Williams and Moates assert their entitlement to qualified immunity.  "Qualified immunity shields public officials from liability for civil damages when their conduct does not violate a constitutional right that was clearly established at the time of the challenged action." *Echols v. Lawton*, 913 F.3d 1313, 1319 (11th Cir. 2019) (citation omitted).  It is designed "to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Wood v. Kessler,* 323 F.3d 872, 877 (11th Cir. 2003) (citation omitted).

To be protected by qualified immunity, Williams and Moates bear the initial burden of proving they were acting within the scope of their discretionary authority. *See Luke v. Gulley*, 50 F.4th 90, 95 (11th Cir. 2022).  Since none of the parties dispute that Williams and Moates were acting within their discretionary authority, the burden shifts to Monaghan to show that qualified immunity should not apply.

*Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1291 (11th Cir. 2009) (citation omitted).

In his response brief opposing summary judgment, Monaghan acknowledges that Williams and Moates seek qualified immunity on all his claims, but he then proceeds to address only their argument to qualified immunity on his malicious prosecution claim. Monaghan does not provide any argument for why Williams and Moates are not entitled to qualified immunity on his civil conspiracy, failure-to-intervene, and supervisory liability claims. As such, Monaghan has conceded the issue of qualified immunity as to these three claims or, at a minimum, has failed to carry his burden to show why qualified immunity should not apply. *See Case v. Eslinger*, 555 F.3d 1317, 1329 (11th Cir. 2009) (failing to address the defendant's qualified immunity assertion "may result in waiver or abandonment of the issue" (citation omitted)). As such, summary judgment is due to be granted in Williams's and Moates's favor on Monaghan's civil conspiracy claim (Count II), failure-to-intervene claim (Count III), and supervisory liability claim (Count IV), thereby leaving for final consideration the malicious prosecution claim (Count I) under § 1983.

## A. Malicious Prosecution Claim

Malicious prosecution is a violation of the Fourth Amendment and is a viable constitutional tort cognizable under § 1983. *Wood*, 323 F.3d at 881. A § 1983 claim

for malicious prosecution requires the plaintiff to show both the elements of the common law tort of malicious prosecution and an unreasonable seizure in violation of the Fourth Amendment. *Williams v. Aguirre*, 965 F.3d 1147, 1157 (11th Cir. 2020). The Fourth Amendment violation must be established via a seizure resulting from the malicious prosecution. *Id.* A claim of malicious prosecution is distinct from a false-imprisonment claim in that malicious prosecution requires a seizure pursuant to legal process, which includes warrant-based seizures and seizures following arraignment, indictment, or a probable-cause hearing. *Id.* at 1158. Where a seizure was made pursuant to legal process, a plaintiff can succeed on a malicious prosecution claim by establishing "(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." *Wood*, 323 F.3d at 882. And to show a violation of his Fourth Amendment right to be free from unreasonable seizures, the plaintiff must establish "(1) that the legal process justifying his seizure was constitutionally infirm and (2) that his seizure would not otherwise be justified without legal process." *Aguirre*, 965 F.3d at 1165.

A plaintiff can establish that the legal process is constitutionally infirm if he can show either (a) that the official should have known that the legal process failed to establish probable cause or (b) that the official "intentionally or recklessly made

misstatements or omissions necessary to support" the legal process. *Id.* As to misstatements by officers, a plaintiff must identify affirmative evidence from which a jury could conclude that a false statement was made intentionally. *Id.* at 1165–66.

### 1. Legal Cause of the Criminal Proceeding Against Monaghan

Williams and Moates first argue summary judgment is due to be granted on Monaghan's malicious prosecution claim because they were not the legal cause of his criminal prosecution for sodomizing Boyett. More specifically, Williams and Moates argue that the chain of causation necessary to hold them liable was broken by the independent actions of prosecutors, the grand jury, a judge, and a jury.

Eleventh Circuit precedent establishes that causation for purposes of a malicious prosecution claim is not limited to the formal initiation of a criminal proceeding. On the one hand, law enforcement is not the legal cause of the criminal proceedings "where there was no evidence that they had anything to do with the decision to prosecute or that they had 'improperly influenced' that decision." *See Williams v. Miami-Dade Police Dep't*, 297 F. App'x 941, 947 (11th Cir. 2008) (per curiam) (citing *Eubanks v. Gerwen*, 40 F.3d 1157, 1160–61 (11th Cir. 1994)). Yet, courts have determined police officers were the legal cause of the criminal proceedings where they "improperly influenced" the prosecutor's decision when they engaged in "deception," which includes fabricating the evidence forming the basis of the prosecution against the plaintiff. *See id.* (citing *Barts v. Joyner*, 865

10

F.2d 1187, 1195 (11th Cir. 1989)); *see also Howe v. City of Enterprise*, 1:15-cv-113-JA-SRW, 2018 WL 8545947, at *40 (M.D. Ala. Sept. 17, 2018) ("[I]f a defendant officer lies about the very fact that gives rise to the charge against a plaintiff, and is, indeed, the very source of that fact, then he or she instituted the proceedings for the purposes of a malicious prosecution claim." (emphasis omitted)).  Likewise, with respect to causation, the Eleventh Circuit has held that "[t]he intervening acts of the prosecutor, grand jury, judge, and jury . . . each break the chain of causation unless plaintiff can show that these intervening acts were the result of deception or undue pressure by the defendant policemen."  *Kelley v. Curtis*, 21 F.3d 1544, 1557 (11th Cir. 1994) (quoting *Barts*, 865 F.2d at 1195) (alteration in original).

Monaghan argues that Williams and Moates were the legal cause of his criminal prosecution because, through coercing Boyett to falsely claim that Monaghan sodomized him, they fabricated Boyett's sodomy allegation that formed the basis for all subsequent prosecutorial decisions.  Monaghan points to Boyett's sworn testimony where he testified that he was presented with the concocted sodomy story as a means to get out of jail.  Williams and Moates dispute that this evidence is sufficient to show causation because Boyett "could not identify who in fact allegedly coerced him" into making the false allegation against Monaghan.  (Doc. 71 at 23.)

Viewing the evidence in the light most favorable to Monaghan, it is true that Boyett did not identify by name the officers that presented him with the sodomy story and could "mainly" recall one person: "a middle-aged black man . . . with a sheriff's uniform." (Doc. 72-13 at 23.) But Boyett's testimony also indicates that there were multiple people involved in having him rehearse the sodomy story multiple times before recording his formal statement. (*See* Doc. 72-13 at 23 ("But we sat at the conference table, and they had me rehearse this story. And then after two or three times, they recorded it.").) The evidence shows that the only two officers involved in interviewing Boyett regarding the alleged sodomy were Williams and Moates. (*See* Doc. 72-4 at 9, 11; Doc. 72-5 (video recording of Boyett's interview conducted by Williams and Moates); Doc. 72-15.) And following this interview at the jail, Williams provided prosecutors an incident report documenting Boyett's sodomy allegation, (Doc. 72-4 at 9; Doc. 72-7 at 8; Doc. 72-15 at 3–4), and Moates contacted a judge to help Boyett make bond to get out of the jail (Doc. 70-28 at 140). Considering the entirety of the record and resolving all inferences in Monaghan's favor, there is sufficient evidence to support Monaghan's version of events. Thus, Monaghan has raised a genuine issue of fact as to whether

Williams and Moates manufactured Boyett's sodomy allegation.[2]  A reasonable jury could conclude that Williams and Moates improperly influenced the district attorney's decision to prosecute Monaghan by coercing Boyett to fabricate a sodomy allegation against Monaghan.

Williams and Moates argue that even if this evidence was fabricated, the chain of causation was broken because the district attorney's office conducted an independent investigation.  Williams and Moates rely on *Molina v. 0115576 Jiffy Lube Int'l, Inc.*, 345 F. App'x 412 (11th Cir. 2009), and *Carter v. City of Melbourne*, 731 F.3d 1161 (11th Cir. 2013) (per curiam), for the proposition that an independent investigation by prosecutors will sever causation for a malicious prosecution claim.  These cases are distinguishable, as there was no evidence that the defendants in *Molina* or *Carter* knowingly presented fabricated evidence to prosecutors (or to the officials who were responsible for arresting and charging the plaintiff).  *See Carter*, 731 F.3d at 1170; *Molina*, 345 F. App'x at 414.  Furthermore, it is arguable whether the actions taken by the district attorney's office here could be construed as an "independent investigation" when Matthews merely re-interviewed Boyett about the alleged sodomy.  There is no evidence for example that the district attorney's office

---

[2] The Court recognizes that Boyett has his own credibility concerns—and severe ones at that—and either told a false story then or is telling a false story now.  But the Court must consider Monaghan's allegations in a light favorable to him as the nonmovant, which means it must consider Boyett's current story as the truthful one. *See Kingsland v. City of Miami*, 382 F.3d 1220, 1228 n.9 (11th Cir. 2004), *abrogated on other grounds by Nieves v. Bartlett*, 139 S. Ct. 1715 (2019).  The jury will have to determine which story is the true one.

interviewed any other individuals, collected any DNA evidence, or reviewed any other documentation other than the incident report submitted by Williams containing Boyett's allegedly fabricated statement. *Cf. Molina*, 345 F. App'x at 414 (police department and state attorney's office conducted independent investigation where they watched surveillance video, interviewed several witnesses, took sworn statements, and gathered other factual information). As such, a reasonable jury could find that the actions taken by the district attorney's office were not so independent and detached from Williams and Moates to insulate them from liability—that is, that Williams's and Moates's actions tainted the district attorney's office's investigation.

Williams and Moates additionally assert that the chain of causation was broken by the grand-jury indictment, arguing that there is no evidence that the allegedly fabricated evidence was presented to the grand jury since neither Williams nor Moates testified during the grand jury proceeding. While the Eleventh Circuit has yet to directly resolve whether a subsequent indictment per se absolves an investigating officer of liability for malicious prosecution, *see Aguirre*, 965 F.3d at 1168, the circuit has not foreclosed the notion that including materially false statements in an investigative report that later leads to an indictment may subject the acting officer to liability. *See Barts*, 865 F.2d at 1195–96 (concluding that intervening acts of a grand jury cannot shield an arresting officer from liability for

14

false arrest where the intervening acts "were the result of deception or undue pressure" by the officer); *but cf. Jones v. Cannon*, 174 F.3d 1271, 1287 (11th Cir. 1999) (finding intervening acts of prosecutor and grand jury in returning an indictment broke the chain of causation from officer's false arrest when the officer is alleged to have perjured himself while testifying before the grand jury in light of precedents affording absolute immunity for grand jury testimony).  In fact, in *Aguirre*, the Eleventh Circuit drew attention to the Supreme Court's suggestion, albeit in dicta, that a plaintiff may maintain a claim under the Fourth Amendment for a seizure that follows an indictment if the grand jury proceeding is tainted by fabricated evidence or otherwise and therefore probable cause is lacking.  965 F.3d at 1168 (citing *Manuel v. City of Joliet*, 137 S. Ct. 911, 920 n.8 (2017)).  The Eleventh Circuit also acknowledged that other circuits have held that police officers may be liable for malicious prosecution where the officer's nontestimonial actions tainted the grand-jury indictment.  *Id.* (first citing *King v. Harwood*, 852 F.3d 568, 584 (6th Cir. 2017); and then citing *Coggins v. Buonora*, 776 F.3d 108, 113 (2d Cir. 2015)).  Both the *King* and *Coggins* courts held that a police officer's conduct that "laid the groundwork" for the indictment—including fabricating evidence—is independently actionable under § 1983.  *Coggins*, 776 at 113; *King*, 852 F.3d at 591. Given these principles, the Court is not persuaded that Williams and Moates can

escape liability for allegedly fabricating the evidence that justified Monaghan's seizure merely because neither individual testified before the grand jury.

Finally, Williams and Moates argue the decision of the jury in Monaghan's criminal trial broke the chain of causation and that Monaghan cannot rely on their allegedly false trial testimony to show that the chain of causation was not broken. Williams and Moates are correct to the extent that Monaghan cannot use their trial testimony to show causation as such testimony is protected by absolute immunity, which the Court explains further in detail below.  Thus, Monaghan may not be able to establish causation with respect to his post-trial seizure.  However, Williams and Moates may nonetheless be liable for their nontestimonial actions that justified Monaghan's pre-trial seizure, including fabricating evidence, irrespective of their testimony given during trial.  *See Barts, 865* F.2d at 1195*; Coggins*, 776 at 113; *King*, 852 F.3d at 591.

In short, Monaghan has raised a genuine issue of fact as to whether Williams and Moates were the source of Boyett's fabricated sodomy allegation.  If a jury were to accept Monaghan's *current* version of events as true, then the jury could conclude that Williams and Moates were the legal cause of Monaghan's criminal prosecution. As such, summary judgment is not due to be granted on this basis.

## 2. Absolute Immunity

Next, Williams and Moates argue Monaghan's malicious prosecution claim is barred by absolute immunity. Section 1983 "does not explicitly provide immunity," but the Supreme Court has reasoned that it is presumed Congress intended for common law immunities to apply to such claims. *See Jones*, 174 F.3d at 1281. "There are two types of immunities: absolute and qualified." *Captain Jack's Crab Shack, Inc. v. Cooke*, No. 21-11112, 2022 WL 4375364, at *6 (11th Cir. Sept. 22, 2022) (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 268–69 (1993)). Courts apply a functional approach to determine whether the particular actions of a government official are protected by absolute immunity or instead the more general qualified immunity. *Jones*, 174 F.3d at 1282; *see also Buckley*, 509 U.S. at 268–69.

Absolute immunity applies to functions that are "intimately associated with the judicial phase of the criminal process." *Jones*, 174 F.3d at 1281 (quoting *Malley v. Briggs*, 475 U.S. 335, 342 (1986)). For example, prosecutors are entitled to absolute immunity for "acts undertaken . . . in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State." *Buckley*, 509 U.S. at 273. Additionally, police officers are entitled to absolute immunity for testimony given during trial or during grand jury proceedings. *Jones*, 174 F.3d at 1281. And notably, the Eleventh Circuit has held that police

officers are entitled to absolute immunity for suborning perjured testimony from trial witnesses. *Id.* at 1288–89.

In contrast, only qualified immunity applies to functions that are not "intimately associated with the judicial phase of the criminal process," such as "investigative or administrative tasks." *Cooke*, 2022 WL 4375364, at *6 (first quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976); and then quoting *Van de Kamp v. Goldstein*, 555 U.S. 335, 342 (2009)). For example, the Supreme Court has held that police officers are not entitled to absolute immunity for submitting supporting affidavits in their applications for arrest warrants. *Malley*, 475 U.S. at 342–43. And prosecutors are not entitled to absolute immunity for actions "not associated with his role as an advocate for the state," *Jones*, 174 F.3d at 1281–82, such as allegedly fabricating evidence, *Buckley*, 509 U.S. at 272–76, or for knowingly making false statements of fact in affidavits supporting an application for an arrest warrant, *see Kalina v. Fletcher*, 522 U.S. 118, 121–23 (1997).

Here, Williams and Moates argue that they are entitled to absolute immunity because Boyett's testimony was the only evidence given at trial to support Monaghan's conviction. According to Williams and Moates, Monaghan's claim that they suborned perjured testimony from Boyett during the interview at the Coffee County Jail is similar to the conduct in *Jones* that the Eleventh Circuit held was protected by absolute immunity. *See* 174 F.3d at 1288–89 (holding defendant police

officer had absolute immunity against a §1983 claim that he suborned perjured testimony from the plaintiff's cell mate, reasoning that "[t]o allow a § 1983 claim based on subornation of perjured testimony where the allegedly perjured testimony itself is cloaked in absolute immunity would be to permit through the back door what is prohibited through the front").

The facts underlying the Circuit's decision in *Jones* are distinguishable from the facts here.  In *Jones*, the defendant police officer allegedly suborned false testimony from the plaintiff's cell-mate *after* the plaintiff was already indicted. 174 F.3d at 1279.  Here, no judicial proceeding had occurred or was underway when Williams and Moates first interviewed Boyett about the alleged sodomy and allegedly coerced him to give a false story about Monaghan.  More importantly, in his response brief opposing summary judgment, Monaghan has clarified that his malicious prosecution claim is not predicated on any grand jury or trial testimony, but rather is based on the alleged "fabricated evidence against [him]; the coercion to have Boyett adopt the false allegations in a recorded statement; their false statements about Monaghan contained in the incident report; and the submission of the recorded statement and incident report to the prosecutor's office."  (Doc. 73 at 56.)  And the Supreme Court and Eleventh Circuit have made it clear that "investigative work with . . . allegedly fabricated [evidence] is not entitled to absolute immunity." *Jones*, 174 F.3d at 1289 (citing *Buckley*, 509 U.S. at 273–74); *see also King*, 852 F.3d at 584;

*Rehberg v. Paulk*, 566 U.S. 356, 370 n.1 (2012) (noting only qualified immunity, and not absolute immunity, extends to law enforcement officers who, for example, falsify affidavits or fabricate evidence). Thus, Williams and Moates are not entitled to absolute immunity for their alleged conduct in manufacturing Boyett's false sodomy allegation against Monaghan.

### 3. Qualified Immunity

Finally, Williams and Moates argue they are entitled to qualified immunity on Monaghan's malicious prosecution claim. As previously noted, it is undisputed that Williams and Moates were acting within their discretionary authority, thus Monaghan bears the burden of establishing why qualified immunity does not apply. To satisfy this burden, Monaghan must establish "(1) that [Williams and Moates] violated a constitutional right and (2) that the relevant right was 'clearly established' at the time of the alleged misconduct." *See Crocker v. Beatty*, 995 F.3d 1232, 1240 (11th Cir. 2021) (citation omitted). While a plaintiff need not demonstrate that there is case law specifically addressing his factual scenario, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). That is, "[t]he relevant, dispositive inquiry in determining whether a right is *clearly* established is whether it would be *clear* to a reasonable [police officer] that his conduct was unlawful in the situation he confronted." *Loftus v. Clark-Moore*, 690 F.3d 1200, 1204 (11th Cir. 2012) (citation

20

omitted). "[I]n the qualified immunity context, it is well established that arrests without probable cause violate the Fourth Amendment." *Grider v. City of Auburn*, 618 F.3d 1240, 1258 (11th Cir. 2010).

When determining qualified immunity on a motion for summary judgment, "courts must construe the facts and draw all inferences in the light most favorable to the nonmoving party and when conflicts arise between the facts evidenced by the parties, [the court must] credit the nonmoving party's version." *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013) (quoting *Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006)).

Monaghan claims that Williams and Moates violated his Fourth Amendment right to be free from unreasonable seizures by fabricating the evidence justifying his arrest.  It has long been well established that "fabricating incriminating evidence violate[s] constitutional rights." *Riley v. City of Montgomery*, 104 F.3d 1247, 1253 (11th Cir. 1997); *see also Jones*, 174 F.3d at 1285 (noting it was "clearly established in 1993 that the Constitution prohibits a police officer from knowingly making false statements" to support probable cause).

Williams and Moates argue that the cases Monaghan cites in his qualified immunity argument are not sufficiently similar to this case to clearly establish the law governing in this case.  They assert in their reply that *Jones* differs because neither Moates nor Williams arrested Monaghan for the alleged sodomy of Boyett.

They likewise assert that *Riley* is inapplicable because the Eleventh Circuit held that the plaintiff "failed to present evidence sufficient to create a triable issue of fact" for the malicious prosecution claim to survive summary judgment.  (Doc. 75 at 16 (quoting *Riley*, 105 F.3d at 1254).)  But as already discussed, here Monaghan has presented evidence raising a genuine dispute of fact as to whether Williams and Moates pursued an investigation and filed a report concerning Monaghan's actions without probable cause, which caused criminal proceedings to be initiated against him.  Furthermore, a plaintiff need not point to factually identical case law to show that a right is clearly established—rather, a plaintiff need only show that the statutory or constitutional issue is "beyond debate."  *See Ashcroft*, 563 U.S. at 741.  Monaghan has done so here.

Williams and Moates also contend they are entitled to qualified immunity because there was arguable probable cause to arrest Monaghan for sodomizing Boyett.  Additionally, Williams and Moates argue qualified immunity applies because they did not sign off on an arrest warrant for Monaghan, nor did they arrest him.  However, the conduct at issue here is not that Williams or Moates arrested Monaghan, but instead that they caused Monaghan to be charged and arrested for sodomizing Boyett.

"Arguable probable cause exists where 'reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have

believed that probable cause existed to arrest Plaintiff.'" *Grider*, 618 F.3d at 1257 (citation omitted).  In contrast with actual probable cause, arguable probable cause "gives ample room for mistaken judgments . . . and reasonable error." *See Gold v. City of Miami*, 121 F.3d 1442, 1446 (11th Cir. 1997) (per curiam) (citations omitted).[3]  Accordingly, the relevant inquiry is "whether the [officer's] conduct violated clearly established law and not whether [Monaghan's] conduct is a crime or ultimately will result in conviction." *Scarbrough v. Myles*, 245 F.3d 1299, 1303 n.8 (11th Cir. 2001) (per curiam).  If the official had arguable probable cause to arrest or charge for *any* offense, qualified immunity will still protect the official. *Grider*, 618 F.3d at 1257 (citation omitted).[4]

According to Williams and Moates, there was arguable probable cause to arrest Monaghan for sodomizing Boyett because Boyett's allegation was the "fourth

---

[3] Prior to the *Aguirre* decision suggesting a reevaluation of the use of the arguable probable cause standard in malicious prosecution claims, the Eleventh Circuit explained in *Grider* that courts are to apply "the same 'arguable probable cause' standard in the qualified immunity context for § 1983 claims for both false arrest and malicious prosecution, as both require a violation of the Fourth Amendment." *Grider*, 618 F.3d at 1257 n.25.

[4] In light of *Aguirre*, it is questionable whether arguable probable cause to seize (or recommend charges) for any offense remains the appropriate framework for determining whether a defendant violated clearly established law in the context of a Fourth Amendment malicious prosecution claim.  First, the *Aguirre* court held that the any-crime rule does not apply to Fourth Amendment malicious prosecution claims. 965 F.3d at 1162.  Moreover, when the *Aguirre* court discussed the "clearly established" prong of qualified immunity, it did not mention arguable probable cause and instead analyzed whether the plaintiff had a clearly established right to not be seized based on intentional and material misstatements in a warrant application. *Id.* at 1168–69.  However, *Aguirre* was decided in 2020, which is after Williams and Moates engaged in the conduct at issue here. For this reason, and also because the parties briefed the issue of arguable probable cause, the Court will analyze whether Williams's and Moates's actions were supported by arguable probable cause.

allegation of sexual misconduct by [Monaghan], establishing arguable probable cause to arrest" based on "an apparent pattern of inappropriate sexual behavior by [Monaghan]." (Doc. 71 at 38–39.) But the mere fact that other individuals had alleged that Monaghan committed sexual misconduct against them does not create arguable probable cause that Monaghan sodomized Boyett. More importantly, the focus of the inquiry here is whether Williams and Moates had arguable probable cause for their actions that resulted in Monaghan's arrest. And Monaghan has presented evidence that, if believed, shows that Williams and Moates coerced Boyett into falsely accusing Monaghan of sodomy and documented this fabricated allegation in an incident report, video interview, and interview notes. That is, Monaghan has raised a genuine dispute as to whether Williams and Moates were the source of Boyett's fabricated sodomy allegation—an allegation that was the sole basis for probable cause to indict and arrest Monaghan in this instance. If a jury were to find Monaghan's version of events as true, then arguable probable cause would not exist, as a reasonable officer possessing the same knowledge as Williams and Moates would know that the predicate probable cause for the arrest—Boyett's sodomy allegation—was false.

Because Monaghan has established a genuine dispute over whether Williams and Moates violated his clearly established rights under the Fourth Amendment,

neither Williams nor Moates are entitled to qualified immunity at this stage of the suit.

## VI. CONCLUSION

Based on the foregoing, it is **ORDERED** as follows:

1. The Motion for Summary Judgment (Doc. 69) is **GRANTED** in part and **DENIED** in part.  It is **GRANTED** as to Count II (failure to intervene), Count III (civil rights conspiracy), and Count IV (supervisor liability).  It is **DENIED** as to Count I (malicious prosecution).

2. This matter will proceed to trial against Defendants solely on Count I (malicious prosecution).

**DONE**, on this the 20th day of March 2023.

R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE